**Cecil GRIFFITH, Marino Hurtado, Luis A. Madrid and Luis Oscar Franklin, Plaintiffs–Appellees,**

v.

**SEALTITE CORPORATION, Defendant–Appellant.**

**No. 89–2099.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1990.

Decided May 30, 1990.

David J. Vergeront, Walter S. Davis, Davis & Kuelthau, Milwaukee, Wis., for plaintiffs-appellees.

Max E. Geline, Milwaukee, Wis., for defendant-appellant.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

MANION, Circuit Judge.

This is an appeal from the district court's denial of relief under Fed.R.Civ.P. 60(b). Because we find the district court lacked subject matter jurisdiction, the action should be dismissed.

I.

Sealtite Corporation contracted to insulate military facilities in the Republic of Panama in 1983. Sealtite hired, among others, Cecil Griffith, Marino Hurtado, Luis

A. Madrid, and Luis Oscar Franklin. Sealtite allegedly did not pay the four their wages in accordance with its employment contract. When Sealtite refused to enter into a conciliation agreement, the four workers initiated a legal proceeding in the Panamanian Labor Court seeking money damages. Plaintiffs complied with Panamanian law in attempting to notify Sealtite of the pending litigation. When no one appeared on behalf of Sealtite, testimony was taken and judgment was entered in favor of plaintiffs. The court awarded Griffith $5,026.30; Hurtado, $4,732.47; Madrid, $3,769.73; and Franklin, $6,031.56. The court also ordered Sealtite to pay interest and 15 percent costs.

Plaintiffs subsequently filed an action in the United States District Court for the Eastern District of Wisconsin to enforce the Panamanian judgment. Sealtite answered the complaint but did not respond when plaintiffs filed for summary judgment on August 26, 1988. The district court granted plaintiffs' motion for summary judgment for $19,560.06 plus 15 percent costs. Sealtite did not appeal the judgment.

On November 4, 1988, Sealtite filed a Rule 60(b) motion to vacate the order granting summary judgment claiming inadvertence or mistake. The district court denied the order. Sealtite appeals the denial, and now alleges that the district court did not have subject matter jurisdiction in the first place.

## II.

Before we may address the merits of Sealtite's 60(b) motion, we must first decide whether the district court had subject matter jurisdiction.[1] This is a diversity action, and there is no question that the parties in this case, four Panamanian nationals and one Wisconsin corporation, are diverse. The only issue is whether the case satisfies the then jurisdictional minimum of $10,000.[2]

Sealtite contends that this is an action to enforce four separate judgments, none of which exceeds $10,000. If that is the case, plaintiffs would not be allowed to aggregate their claims to satisfy the jurisdictional amount.

> If two plaintiffs each have a $6,000 claim against a single defendant ... they may not aggregate their claims and may not sue in a federal court, no matter how similar their claims may be, so long as they are regarded as "separate and distinct." Only if the claims are based on a common undivided interest may multiple plaintiffs aggregate their claims to satisfy the jurisdictional amount requirement.

Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3704 (footnotes omitted).

Conversely, plaintiffs contend that this is an action to enforce a single judgment of $19,560.06. Plaintiffs argue that it is improper for this court to look to the underlying claims, i.e., the separate claims of four people in Panama's labor court, to determine whether the jurisdictional amount is satisfied. The issue, then, is whether plaintiffs' interests in the judgment or judgments are "separate and distinct" or "common and undivided."

The rule that plaintiffs may not aggregate separate and distinct claims to satisfy a jurisdictional amount originated with the case of *Oliver v. Alexander*, 6 Pet. 143, 8 L.Ed. 349 (1832), a case very similar to ours. In *Oliver*, several seamen brought joint suit in admiralty for the recovery of wages. The district court dismissed the suit, and the circuit court affirmed. The

---

1. Sealtite's original Rule 60(b) motion appears to be nothing more than an untimely challenge to the merits of the summary judgment motion. This frivolous challenge nevertheless opens the door to our review of the district court's jurisdiction. On its own initiative, Sealtite could have properly challenged the district court's subject matter jurisdiction by claiming a void judgment under Rule 60(b)(4). See Wright & Miller, *Federal Practice and Procedure: Civil*

§ 2862. Therefore, Sealtite's belated jurisdictional challenge does not circumvent the restrictions to our review contemplated by the Federal Rules.

2. This action was filed before the jurisdictional minimum was increased to $50,000. *See* 28 U.S.C. § 1332(a).

Supreme Court reversed and directed the lower court to ascertain the sum due to each seaman. The circuit court subsequently entered a separate decree for each seaman. In no case did a seaman's allotted sum exceed $900, but the total exceeded $2,000. The defendants appealed to the Supreme Court, which required a jurisdictional amount of $2,000. Therefore the first issue before the Court was whether the amounts due to the seamen could be aggregated.

The Supreme Court held the claims could not be aggregated:

> The decree ... assigns to each seaman severally the amount to which he is entitled, and dismissed the libel as to those and those only who have maintained no right to the interposition of the court in their favor. The whole proceeding, therefore, from the beginning to the end of the suit, though it assumes the form of a joint suit, is in reality a mere joinder of distinct causes of action by distinct parties, growing out of the same contract....

*Id.* at 146–47. The Court continued:

> From this summary review of the nature and operation of the proceedings in the admiralty in cases of joint libels for wages, it is obvious that the claim of each seaman is distinct and several; and the decree upon each claim is in like manner distinct and several. One seaman cannot appeal from the decree made in regard to the claim of another, for he has no interest in it, and cannot be aggrieved by it. The controversy, so far as he is concerned, is confined solely to his own claim; and the matter of dispute between him and the owners, or other respondents, is the sum or value of his own claim, without any reference to the claims of others.

*Id.* at 147.[3]

There are two key differences between *Oliver* and this case. First, *Oliver* in-volved the jurisdictional amount of an appeal, whereas this case involves the jurisdictional amount of an action to enforce a judgment. Therefore one might argue it was permissible to consider the nature of the underlying causes of action in *Oliver* but not in this case. However, in *Shields v. Thomas,* 17 How. 3, 15 L.Ed. 93 (1854), the Supreme Court indicated otherwise. In *Shields,* John Goldsberry of Kentucky died intestate, leaving a large estate. His widow then married John Shields, who thereby obtained possession of the property of the deceased. Several representatives filed a bill in the Chancery Court of Kentucky against Shields, charging that they were entitled to property which Shields had converted to his own use. The representatives obtained a decree against Shields for money damages, with individual amounts being apportioned to the respective representatives. The representatives sought to enforce the decree in federal court in Iowa (where Shields lived). The decree's entire sum exceeded the jurisdictional amount of $2,000, but the sum allotted to each representative was less than $2,000. The Supreme Court held there was jurisdiction:

> [T]he court thinks *the matter in controversy in the Kentucky court,* was the sum due to the representatives of the deceased collectively; and not the particular sum to which each was entitled, when the amount due was distributed among them, according to the laws of the State. They all claimed under one and the same title. They had a common and undivided interest in the claim, and it was perfectly immaterial to the appellant how it was to be shared among them.... It is like a contract with several to pay a sum of money. It may be that the money, when recovered, is to be divided between them in equal or unequal proportions. Yet, if a controversy arises on the contract, and the sum in dispute upon it

---

3. As recently as 1973, the Supreme Court recognized "the judicial interpretation of 'matter in controversy' to bar aggregation of separate and distinct claims dated back to at least *Oliver v. Alexander,* which is representative of the unbroken line of decisions of this Court.... The original *Alexander* construction of our appellate jurisdiction was applied to the jurisdictional requirement for federal trial courts...." *Zahn v. International Paper Co.,* 414 U.S. 291, 294 n. 3, 94 S.Ct. 505, 508 n. 3, 38 L.Ed.2d 511 (1973).

exceeds $2,000, an appeal would clearly lie to this court, although the interest of each individual was less than that sum.... This being the controversy in Kentucky, the decree of that court, apportioning the sum recovered among the several representatives, does not alter its character when renewed in Iowa. So far as the appellant is concerned, the entire sum found due by the Kentucky court is in dispute.

*Id.* 17 How. at 4–5 (emphasis added).

The Court specifically looked to "the matter in controversy in the Kentucky court"—the cause of action underlying the judgment—in determining whether to aggregate the claims. The claims were aggregated in *Shields* because the *state court causes of action* were common and undivided. The Court distinguished *Oliver v. Alexander, supra:* "[A]lthough [in *Oliver*] the crew are allowed by law, for the sake of convenience, and to save costs, to join in a suit for wages, yet the right of each seaman is separate and distinct from his associates. His contract is separate; and his recovery does not depend upon the recovery of others, but rests altogether on its own evidence and merits. And he does not recover a portion of a common fund to be distributed among the claimants, but the amount due to himself on his own separate contract." *Id.* at 5. This analysis makes it clear that a court must look to the underlying causes of action giving rise to a judgment in order to determine whether the plaintiffs' claims can be aggregated to satisfy the jurisdictional amount. The plaintiffs' original claims for wages in this case, like those in *Oliver*, were separate and distinct.

The second possible distinction between *Oliver* and this case is that in *Oliver* each seaman's monetary award was set forth in a separate decree, whereas in this case the plaintiffs' adjudged recoveries were set forth in a single document. However, in *Rich v. Lambert*, 12 How. (53 U.S.) 345, 13 L.Ed. 1017 (1851), the Supreme Court held that appellants could not aggregate amounts awarded to them even in a single decree if their causes of action were separate and distinct. The mere fact that the

plaintiffs in this case can point to a single document which specifies the amount to which each is entitled does not mean that the document is a single judgment in which the plaintiffs have a common and undivided interest. See 1 *Freeman on Judgments*, § 100, at 174 (1925):

> [W]here the rights of the parties in the relief to which they are entitled are different, the judgment may not be joint but should be several. If several plaintiffs properly join, but their causes of action are separate and distinct and their damages may be different, the judgment should not be for an aggregate sum but should segregate and award to each the damages or relief to which he is properly entitled.

More current case law continues to follow these precedents. Multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional amount; they cannot aggregate "claims where none of the claimants satisfies the jurisdictional amount." *Zahn v. International Paper Co.*, 414 U.S. 291, 294–95, 94 S.Ct. 505, 508–09, 38 L.Ed.2d 511. See also *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075 (7th Cir.1986).

Because the underlying causes of action which plaintiffs brought in Panama's Labor Court were separate and distinct, we find that they cannot aggregate their respective awards to satisfy the jurisdictional amount. Therefore we vacate the district court's decision and remand with instructions to dismiss for lack of subject matter jurisdiction.

## III.

We must add one final note. While we may question why plaintiffs brought this case in federal court in the first place, the question of jurisdiction did not occur to Sealtite except as an afterthought in its brief on appeal. In the district court, Sealtite did not bother to respond to plaintiffs' summary judgment motion. Nor did it appeal the ensuing default judgment. The

district judge denied Sealtite's belated and meritless attempt to claim inadvertence or mistake. Although the appeal from the 60(b) denial had no merit, the issue of jurisdiction is ever present, even if it works to the advantage of a dilatory litigant. An early resolution of this matter would have saved much judicial time and expense to the parties. Presumably the merits of this case will be re-examined in state court. Each party will bear its own costs for this appeal.